**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| A.P.,                       ) | |
|                          ) | |
|      **Plaintiff,**         ) | |
|                          ) | |
| **v.**                       ) | |
|                          ) | |
| **FAYETTE COUNTY BOARD OF** ) | |
| **EDUCATION; DR. JOSEPH**   ) | **Case No. _____** |
| **BARROW, JR. in his official**   ) | |
| **capacity; DR. DAN LANE, DR.** ) | |
| **CURTIS ARMOUR, JR. and DR.** ) | |
| **BRANDI JOHNSON, in their**   ) | |
| **official and individual capacities** ) | |
|                          ) | |
|      **Defendants.**      ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, A.P., by and through her attorneys, sues Defendants Fayette

County Board of Education ("the Board"), Superintendent Joseph Barrow,

Principal Dan Lane, Assistant Principal Curtis Armour, and Assistant Principal

Brandi Johnson, and states:

**INTRODUCTION**

1.      On August 23, 2017, when A.P. was in her second year at Fayette County High School ("FCHS"), she was sexually and physically assaulted by another student, J., who reportedly had a history of sexually inappropriate behavior. The next day, in an attempt to find emotional support and guidance, A.P. told a teacher and two counselors about the assault. A.P. thought that her report would remain confidential. Instead, one of the counselors wrongly reported the assault as consensual to senior administrators for disciplinary action against A.P. The senior administrators not only failed to adequately investigate the assault, but also retaliated against her by expelling her and denying her accommodations necessary for her to learn in a safe and respectful educational environment.

2.      As a direct result of the school administrators' retaliation, A.P. has been out of school for almost two years, as she does not feel safe attending a school that punished her for being the victim of a sexual assault.

3.      Upon information and belief, the teachers and administrators at FCHS knew J. had previously propositioned other female students at school for sex. Defendants Lane, Armour and Johnson were or should have been on a heightened

2

duty to protect other students from sexual harassment by him.  They negligently, recklessly and/or wantonly breached this duty by, inter alia, failing to supervise properly the student who assaulted A.P. and the students around him.

4.     Defendants received a report of an assault that created a sexually hostile environment, and retaliated against A.P., the person who made the report, by suspending, expelling and later upholding the expulsion against her on appeal. By retaliating and acting with deliberate indifference to her complaint of sexual harassment and assault, the Board and its employees subjected A.P. to sexual harassment and deprived her of equal access to educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. The Board and its employees also violated A.P.'s rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as well as tort law.

## PARTIES

5.     A.P. is a resident of Fayette County, Georgia, who was enrolled as a minor in FCHS at the beginning of the 2017-18 school year.

6.     Joseph C. Barrow is the Superintendent of Fayette County Public Schools ("School District"). He has served as Superintendent and a final

policymaker since July 1, 2013. A final policymaker is an individual who is empowered with final authority over certain policies within the School District. Pursuant to the Board's policy, the Superintendent makes final decisions regarding several matters, including expulsions for violations of the student code of conduct. He is sued in his official capacity. Mr. Barrow is subject to the venue and jurisdiction of this Court and may be served at 205 LaFayette Avenue, Fayetteville, Georgia 30214.

7.    Dan Lane was principal of Fayette County High School during the 2017-18 school year. Lane was a final policymaker empowered to make, review, and approve various final decisions about FCHS's functions. Board policy grants unreviewable discretion to the principal in resolving harassment complaints.  He is sued in his individual and official capacity. Mr. Lane is subject to the venue and jurisdiction of this Court and may be served at 201 Walt Banks Road, Peachtree City, Georgia 30269.

8.    Dr. Curtis Armour was an assistant principal at Fayette County High School during the 2017-18 school year.  Armour was empowered to investigate allegations of sexual harassment and take corrective action against student harassers.

4

He is sued in his individual and official capacity. Mr. Armour is subject to the venue and jurisdiction of this Court and may be served at 155 Erie Avenue, Decatur, Georgia 30030.

9.     Dr. Brandi Johnson was an assistant principal at Fayette County High School during the 2017-18 school year. Johnson was empowered to investigate allegations of sexual assault and take corrective action against student harassers. She is sued in her individual and official capacity. Dr. Johnson is subject to the venue and jurisdiction of this Court and may be served at 3551 Underwood Road, Conyers, Georgia 30013.

10.     Fayette County Board of Education is a government entity engaged in providing education to the children in Fayette County, Georgia. In so doing it receives funding from both the State of Georgia and the United States government. Fayette County Board of Education is subject to the venue and jurisdiction of this Court and may be served at 205 LaFayette Avenue, Fayetteville, Georgia 30214.

## CONDITIONS PRECEDENT

11.     Prior to the filing of the instant Complaint, Plaintiff filed a Notice of Claim pursuant to § 36-11-1 of the GA. CODE (2010).

## JURISDICTION AND VENUE

12.     This action is filed pursuant to 42 U.S.C. §§ 1983 and 20 U.S.C. §§ 1681 seeking redress of injuries suffered by Plaintiff A.P. from deprivation under color of state law, of rights secured by the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972.  This action also claims violations of Georgia State law.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

13.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Georgia state law claims since these claims are so related to the claims in the § 1983 civil rights action that they form part of the same case and controversy.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and other applicable law because the cause of action arose in Fayette County, Georgia, which is situated within the district and divisional boundaries of the Northern District of Georgia, Newnan Division.

15.     All conditions precedent to the filing of the instant Complaint have been satisfied.

6

## FACTS

16.     Paragraphs 1 through 15 are incorporated herein as if set out in full.

17.     Plaintiff A.P. was a student at FCHS in Fayette County, Georgia. Pursuant to the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1400 et seq., A.P. was eligible for special education services and had an Individualized Educational Program (IEP).

18.     FCHS is governed by the Fayette County Board of Education through its principal; it receives federal funds for the education and welfare of its students.

19.     Defendant Dan Lane was the Principal at FCHS during the 2017-18 school year and was the highest-ranking school official present at FCHS. He had the first line of responsibility for ensuring that FCHS students were safe.

20.     Defendant Lane was directly responsible for hiring, training, retaining and supervising teachers at FCHS including Defendants Armour and Johnson. He was responsible for protecting, supervising, disciplining, suspending, and expelling students at FCHS including Plaintiff A.P. and the assailant J. At all times relevant hereto, Defendant Lane acted under color of state authority.

21.     Defendants Dr. Curtis Armour and Dr. Brandi Johnson were the Assistant Principals at FCHS.  They were directly responsible for protecting, supervising, disciplining, suspending, and expelling students at FCHS including Plaintiff A.P. and assailant J. At all times relevant hereto, Defendant Armour and Johnson acted under color of state authority.

22.     The Defendants were *in loco parentis* of Plaintiff A.P. and assailant J. while A.P. and J. were attending FCHS, as Defendants assumed the obligations of a parent under the applicable, limited circumstances.

23.      Upon information and belief, assailant J.'s harassing, intimidating, and sexually aggressive behavior was known to all the Defendants and persons empowered to take corrective action on behalf of Defendants before A.P. reported the assault and prior to August 23, 2017.

24.     Despite the Defendant's knowledge of J.'s harassing, intimidating and sexually-aggressive behavior, J. was not properly supervised, monitored or reprimanded for this behavior.

25.     The Defendants' failure to properly supervise or monitor J. in light of his harassing, intimidating, and sexually aggressive behavior violated the Board's

8

own policies and procedures regarding protection of students from harassment, intimidation, and sexual assault.

26.     On August 23, 2017, A.P. was a 16-year-old student at FCHS when she was sexually assaulted by fellow student J.

27.     That day, A.P. had stayed late after school and while she was completing extra credit work, J. repeatedly texted A.P. to come meet him in the hallway.  When she eventually went to see what he wanted, the two talked for some time and then began kissing. After some time, J. propositioned A.P. for oral sex. A.P. said she did not want to do that and tried to rebuff his advances. But J. continued to pressure her in an increasingly aggressive manner—making A.P. feel more and more uncomfortable.

28.     A.P. tried to leave twice, and J. grabbed her by the throat each time— the second time so hard she fell back into a wall behind her.

29.     A.P. feared for her safety and believed that J. would not let her leave until he got what he wanted, and so she unwillingly and briefly performed oral sex. The encounter ended shortly thereafter and both students left school.

30.     The next day, on August 24, J. texted A.P. telling her not to text him,

9

speak to him, or look at him because doing so would make her "just . . . look stupid."

31.     At least two teachers—Mr. Ed and Ms. Brayboy—noticed that A.P. seemed withdrawn from class, so much so that Ms. Brayboy pulled her into the hallway to ask if something was wrong. A.P. did not say anything but was fighting back tears, so Ms. Brayboy allowed her to go to the bathroom to cry.

32.     Later that day, A.P. notified her trusted teacher, Ms. Mitchell, that J. had "made her do things that she did not want to do," physically assaulted her, and sent harassing text messages. A.P. showed Ms. Mitchell the text messages and then began to cry hysterically.

33.     Ms. Mitchell tried to elevate the matter to a counselor whom A.P. knew and trusted, but she was unavailable. Instead, A.P. met with Mr. Jassmon Parham, a male counselor who had never met A.P. and had no prior experience interviewing a child victim of sexual assault one-on-one, and Ms. Jen Travis, another counselor whom A.P. did not know. A.P. was hesitant to tell the counselors what happened until the counselors assured her that their conversation would remain confidential.

34.     A.P. reported the assault by writing down the word "head" on a post-it note, indicating that she had been forced to perform oral sex. A.P. then named J.

after Mr. Parham volunteered his name and mentioned that other students had complained about J.'s behavior. Near the end of their conversation, J. texted A.P. asking her why he was being called to the office and whether she "snitched" on him.

35.     The next day, on August 25, A.P. was called in to meet with Defendants Assistant Principals Curtis Armour and Brandi Johnson. A.P. did not answer their questions because she no longer trusted the school officials to keep her statements confidential and feared retaliation.

36.     Defendants Armour and Johnson confiscated A.P.'s cellphone and placed her in in-school-suspension (ISS) while they interviewed J. and reviewed video footage of the hallway near where the assault occurred. The video footage was inconclusive because the assault happened in an area not visible to the security cameras.

37.     After reviewing the video, Defendants Armour and Johnson called A.P. into the office again and told her they had talked to J. and reviewed a video of the incident, leaving out the fact that the cameras did not capture the assault. At this point, A.P. asked both Armour and Johnson whether the video showed when J. grabbed her neck so hard that she fell into a wall, to which Johnson responded, "it

looked like you liked it." The assistant principals then tried to send A.P. back to ISS, but she objected once she saw that J. had also been placed in ISS.

38.    At no point was A.P. advised of her rights under Title IX, given the contact information for the Title IX coordinator, told she could file a Title IX complaint, or given information about the school's procedure for investigating such complaints.

39.    Near the end of the day, A.P. was retaliated against by Defendant Armour when he gave her a ten-day out-of-school suspension and told her that she would be referred for further disciplinary action for violating a school conduct code prohibiting "sexual impropriety."

40.    In a letter dated August 30, Defendant Superintendent Joseph Barrow notified A.P. and her mother that the disciplinary hearing would be held on September 7, 2017.

41.    At the hearing before the disciplinary tribunal, J. did not testify. A.P. did, and she produced text message records that corroborated her version of events, clearly showing that A.P. had no notice of J.'s intentions when the two met in the hallway. No evidence refuted her version of events or her testimony that she

withheld consent to any sexual activity with him over and over again.

42.    Defendant Principal Lane presented the school's position at the hearing, asserting that because A.P. voluntarily met J. after school, she necessarily consented to everything that happened afterward—including the sexual assault. In his closing statements, Principal Lane argued, without evidence, that A.P. wanted to give J. oral sex as a birthday gift, and that she became angry after the incident not because her assailant was sending harassing and humiliating text messages, but because he did not show her affection afterwards.

43.    School counselor Ms. Travis testified at the hearing that she had interviewed more than 20 child victims of sexual abuse over 16 years, and that victims may react in unusual ways, such as giggling, as a coping mechanism. Ms. Travis also testified that although her interaction with A.P. was limited, she "definitely" thought A.P. needed additional counseling after the assault and ensuing suspension from the school. However, neither she nor any of the other school officials attempted to connect her to any such resources.

44.    School counselor Mr. Parham testified at the hearing that he had no experience interviewing a victim of child sexual abuse. Mr. Parham testified that

because A.P. giggled when she initially reported the sexual encounter, he concluded the sexual encounter was consensual despite A.P.'s repeated insistence that it was not. Defendant Armour testified at the hearing that he had no prior experience interviewing a victim of child sexual abuse and noted her uncooperative demeanor under interrogation. On these bases, they both stated that they felt justified in referring A.P. for disciplinary action.

45.    A.P.'s testimony remained consistent throughout: she met with J. to talk, the two kissed -- consensually, and then J. propositioned her for oral sex. When A.P. said no and tried to leave, he grabbed her by the neck twice, made her fall into a wall, and coerced her into performing oral sex for a few seconds.

46.    In spite of this testimony, the tribunal found A.P. guilty of violating the school conduct code, and based on Defendant Principal Lane's recommendation, expelled her from FCHS for the entire remainder of the 2017-18 school year, and referred her to Fayette County Alternative School.

47.    A.P. did not attend the alternative school because she was concerned J. would also be there, and the Board refused to give her any assurances otherwise.

48.    In a letter dated September 14, 2017, Superintendent Barrow notified

A.P. and her mother of the decision to expel A.P. and her right to appeal to the Board. A.P. filed a timely appeal.

49.     In a letter dated October 17, 2017, Superintendent Barrow informed A.P. that the Board upheld A.P.'s expulsion and notified her of her right to appeal to the State Board of Education. A.P. filed a timely appeal.

50.     In a decision dated February 18, 2018, the State Board of Education affirmed the Board's decision to expel A.P. but noted it did not have jurisdiction to determine whether the school violated Title IX.

51.     The Board and its officials failed to offer appropriate accommodations to A.P. following the assault and took no effective steps to make sure A.P. could continue to attend FCHS for the remainder of the 2017-18 school year or to assure her that she would not be subject to further harassment or retaliation from J. or school officials the following school year.

52.     The U.S. Department of Education's Office for Civil Rights has recognized the need for adequate training and responses to sexual harassment in schools and has issued guidance for public school districts in 1997, 2001, 2011, and

2014 on this issue.[1] These guidance documents explain in detail how school officials should investigate reports of harassment and assault, including when to report an incident to the Title IX coordinator, how to handle requests for confidentiality, issues that may arise if the harassed student has a disability, and appropriate remedies for student-on-student harassment. The Defendants and other school officials failed to follow the most basic requirements outlined in these guidance documents.

53.   For example, schools are required to follow certain procedures when receiving a confidential report, including discussing confidentiality standards with the complainant at the outset; disclosing that maintaining confidentiality may limit the school's ability to respond; that if the complainant fears retaliation, Title IX prohibits such conduct and the school will take strong responsive action if retaliation occurs; and that if the complainant still desires confidentiality, the school should take all reasonable steps to respect the complainant's request for confidentiality so

---

[1] For almost two decades, the Department of Education has issued multiple guidance documents explicitly stating the need for schools to train their employees on addressing student-on-student sex-based harassment, including how to handle a complainant's request to maintain confidentiality. U.S. Dep't of Educ., Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014); ED OCR, Dear Colleague Letter: Sexual Violence (Apr. 4, 2011); ED OCR, Dear Colleague Letter: Harassment and Bullying (Oct. 26, 2010); ED OCR, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, and Third Parties (Jan. 19, 2001); ED OCR, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (Mar. 1997).

long as doing so would not preclude the school from addressing the harassment and preventing harassment of other students. The record shows that neither Parham, Travis, nor Defendants Lane, Armour, or Johnson followed any of the procedures for how to investigate and remedy a complaint of sexual harassment in which the harassed student asks to remain anonymous, declines to name their harasser, or otherwise requests confidentiality.

54.    A.P.'s injuries and emotional distress have been directly caused by a systematic failure of the administrators at Fayette County High School and the Fayette County Board of Education to properly supervise and discipline a student who posed a real and immediate danger to his fellow students, to properly investigate an incident in which that student sexually harassed A.P. culminating in an assault— resulting in A.P.'s expulsion from school, to properly train school officials to investigate complaints of sexual harassment and assault, and to not retaliate against A.P. for making a report, which is an activity protected by Title IX.

55.    Plaintiff expressly reserves the right to amend the allegations contained herein and to add additional defendants as needed, and hereby places Defendants on notice of such.

17

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
Violation of Title IX, 20 U.S.C. § 1681(a) – Sexual Harassment
(Defendant Fayette County Board of Education)

56.     A.P. incorporates all preceding paragraphs into this Count by

reference as though fully restated herein.

57.     Title IX of the Education Amendments of 1972 provides, with certain

exceptions, that "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance."  20 U.S.C. § 1681(a).

58.     The Board receives federal financial assistance pursuant to Title IX.

59.     Upon information and belief , the Board, Superintendent Barrow,

Principal Lane, and Assistant Principals Armour and Johnson had actual notice of

J.'s previous sexually inappropriate behavior and  Barrow, Lane, and the assistant

principals had the authority to take steps to prevent J. from harassing A.P. or other

students prior to August 23, 2017.

60.     After August 23, 2017, appropriate persons with the authority to take corrective action on behalf of Defendants had notice of J.'s assault of A.P.

61.     In spite of its knowledge of J.'s prior conduct, its control over the perpetrator, the assault, and how it was affecting A.P., the Board and its officials failed to monitor or supervise J. or otherwise prevent him from harassing other students. In spite of its knowledge of J.'s assault of A.P., the Board and its officials failed to provide appropriate accommodations to A.P. following the assault and took no effective steps to address or stop the sexual harassment or to facilitate A.P.'s continued equal access to educational opportunities and benefits.

62.     The Board and its officials were thus deliberately indifferent to reports of sexual harassment and sexually inappropriate behavior by J. The response was clearly unreasonable in light of the known circumstances.

63.     As a result of the Board's deliberate indifference to sexual harassment, A.P. was excluded from participating in, denied the benefits of, and subjected to discrimination in, the School District's education program on the basis of her sex, in violation of Title IX.

64.     As a direct and proximate result of the Board's deliberate

indifference, A.P. has suffered injuries, including emotional distress, for which she

is entitled to be compensated.

## SECOND CLAIM FOR RELIEF

Violation of Title IX, 20 U.S.C. § 1681(a) – Retaliation

(Defendant Fayette County Board of Education)

65.     A.P. incorporates all preceding paragraphs into this Count by

reference as though fully restated herein.

66.     As a direct result of her report of sexual assault, the school officials

took adverse action against A.P. by attempting to place her in ISS with her

assailant, giving her a ten-day out-of-school suspension, expelling her for the

remaining nine months of the 2017-18 school year, and referring her to an

alternative school that her assailant could likely also be attending.

67.     The Board and its officials thus retaliated against A.P. for reporting

that she had been the victim of sexual harassment.

68.     As a result of Defendants' unlawful retaliation, A.P., on the basis of

her sex, was excluded from participating in, denied the benefits of, and subjected

to discrimination in, the school district's education program in violation of Title
IX.

69.    The Board and its officials' retaliation caused A.P. to withdraw from
school entirely, as she could not feel safe or trust a school or officials that would
punish her for reporting that she was the victim of sexual assault.

70.    As a direct and proximate result of Defendants' retaliation, A.P. has
suffered injuries including emotional distress, for which she is entitled to be
compensated.

### THIRD CLAIM FOR RELIEF
Violation of the Right to Equal Protection, Brought Under 42 U.S.C. § 1983
Hostile Environment
(Defendants Fayette County Board of Education, Barrow, and Lane)

71.    A.P. incorporates all preceding paragraphs into this Count by
reference as though fully restated herein.

72.    Defendants the Board, Superintendent Barrow, and Principal Lane
were at all relevant times final policymakers and administrators acting under color
of law.

21

73.     Defendants the Board, Superintendent Barrow, and Principal Lane maintain a policy, custom, and practice of (i) investigating every sexual incident, including sexual assault, as if it is consensual sexual activity, and (ii) initiating disciplinary action against the victim and assailant.

74.     Consistent with its policy and custom, Defendants the Board, Superintendent Barrow, Principal Lane, and Assistant Principals Armour and Johnson treated A.P., who reported that she had been coerced into sexual conduct, as if she had violated the student code of conduct by confiscating her phone, placing her in ISS, suspending her for ten days, and referring her for expulsion proceedings.

75.     Defendants had actual knowledge that pursuant to their policies and customs, A.P. had been denied equal access to the School District's resources and opportunities on the basis of her sex.

76.     For these reasons, Defendants' punitive response to reports of sexual harassment amounted to deliberate indifference.

77.     Defendants' deliberate indifference to reports of sexual harassment violated A.P.'s substantive due process rights under the Fourteenth Amendment,

including equal access to her educational institution's resources and opportunities without discrimination on the basis of sex, freedom from sexual abuse in school, and right to bodily integrity.

78.     As a direct and proximate result of Defendants' actions, inactions, deliberate indifference, and violations of Plaintiff's clearly established Constitutional rights, A.P. sustained and continues to sustain injuries, including emotional distress, for which she is entitled to be compensated.

**FOURTH CLAIM FOR RELIEF**
Violation of the Right to Equal Protection, Brought Under 42 U.S.C. § 1983
Failure to Train
(Defendants Fayette County Board of Education, Barrow, and Lane)

79.     A.P. incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

80.     Defendants the Board, Superintendent Barrow, and Principal Lane were at all times relevant policymakers and administrators, acting under color of law, who had a duty to train—and failed to train—administrators, teachers, staff, employees, students, and parents concerning the Board and Fayette County High

School policies on reporting and addressing sexual harassment of students like A.P.

81.     School district employees were insufficiently and inappropriately advised by Defendants the Board, Superintendent Barrow, and Principal Lane on Title IX and school policies regarding the investigation and response to reports of sexual assault and/or sexual harassment, at both the School District and school levels. This failure is evidenced by the following:

 a. Upon information and belief, the Board lacks adequate training materials and/or programs for employees on recognizing, preventing and addressing sexual harassment promptly and equitably.

 b. Defendants Armour and Johnson failed to refer A.P. to a Title IX coordinator, tell her of her right to seek accommodations under Title IX, or file an official complaint under the school's Title IX grievance procedures.

 c. Defendants Armour and Johnson failed to perform an adequate, reliable, and impartial investigation of A.P.'s allegations.

24

    d.  Defendants Armour and Johnson failed to make sure interim measures minimized the burden on A.P. during the investigation.

    e.  Mr. Parham and Defendant Armour failed to follow procedures on how to investigate and remedy a complaint of sexual harassment in which the harassed student wishes to maintain confidentiality.

82.    Defendants failed to effectively end the harassment, prevent it from recurring, and remedy the effects of the harassment on A.P. The Board, Superintendent Barrow, and Principal Lane had actual knowledge of their legal obligations, pursuant to Title IX, and prior case law, as summarized in administrative guidance issued by the U.S. Department of Education, to appropriately train staff on how to respond to and address reports of sexual harassment—including reports in which the complainant requests confidentiality—and to avoid creating hostile environments within FCHS.  They also had actual knowledge that not training staff to appropriately respond to or address sexual harassment results in violation of students' substantive due process rights under the Fourteenth Amendment, including, but not limited to, denying students equal access to the district's educational resources and opportunities on the basis of sex.

83.     Given the Board's, Superintendent Barrow's, and Principal Lane's actual knowledge of the need to train school and district staff to appropriately respond to and address reports of sexual harassment to avoid violating students' constitutional rights, their failure to do so was unreasonable and amounted to deliberate indifference.

84.     Defendants' failure to adequately train its administrators and staff regarding how to appropriately respond to and address claims of sexual harassment at FCHS specifically and directly caused the School District to violate A.P.'s substantive due process rights under the Fourteenth Amendment, including equal access to her educational institution's resources and opportunities without discrimination on the basis of sex, freedom from sexual abuse in school, and right to bodily integrity.

85.     As a direct and proximate result of Defendants' actions and violations of Plaintiff's clearly established Constitutional rights, A.P. sustained and continues to sustain injuries, including emotional distress, for which she is entitled to be compensated.

**FIFTH CLAIM FOR RELIEF**
Violation of the Right to Equal Protection, Brought Under 42 U.S.C. § 1983
Supervisory Liability
(Defendant Barrow)

86.     A.P. incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

87.     Defendant Superintendent Barrow was at all relevant times an employee of the Board, acting under color of law, who had supervisory duties and responsibilities with respect to his subordinates, including Principal Lane, Armour, Johnson, and Parham.

88.     Defendant Superintendent Barrow had actual knowledge and/or constructive knowledge, including knowledge he would have had if he used reasonable care or diligence, that his subordinates engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to A.P. based on Barrow's receipt of transcripts from the disciplinary hearing revealing Armour's mishandling of the investigation and Lane's recommendation that A.P. be expelled for nonconsensual sexual activity.

27

89.     Defendant Superintendent Barrow's responses to this actual and constructive knowledge were so inadequate as to show deliberate indifference to or tacit authorization of his subordinates' mistreatment of A.P..

90.     Defendant Superintendent Barrow's responses to this actual and constructive knowledge exhibited reckless and/or callous indifference to A.P.'s federally protected rights.

91.     Defendant Superintendent Barrow took no action to correct his subordinates' adverse action against A.P. for reporting sexual harassment and other failures to ensure A.P. could remain at FCHS.

92.     Further, Defendant Superintendent Barrow maintained a policy, custom, and practice of (i) investigating every sexual incident, including sexual assault, as if it were consensual activity, and (ii) initiating disciplinary action against the victim. He maintained this policy, custom, and practice, which school district employees enacted, with deliberate indifference to the consequences.

93.     Defendant Barrow's failure to supervise and his policy, custom, and practice violated A.P.'s, and other students', substantive due process rights under the Fourteenth Amendment including equal access to her educational institution's

28

resources and opportunities without discrimination on the basis of sex, freedom from sexual abuse in school, and right to bodily integrity.

94.     As a direct and proximate result of Defendants' actions, inactions, failure to supervise, policy, custom, practice, and violations of Plaintiff's clearly established Constitutional rights, A.P. sustained and continues to sustain injuries, including emotional distress, for which she is entitled to be compensated.

### SIXTH CLAIM FOR RELIEF
### Negligence

**(Defendants Principal Lane, Assistant Principals Armour and Johnson)**

95.     A.P. incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

96.     Standing *in loco parentis*, the Defendants owed a duty to all students at FCHS, including A.P., to act in a reasonably prudent manner when executing their duties as employees of Fayette County High School to supervise and monitor students who pose a real and immediate danger to their fellow students and to protect all students from harassment, intimidation and sexual assault.

97.     The Defendants negligently breached their duties to A.P. by failing to

29

supervise or monitor J. before the assault despite their knowledge of his habit and practice of harassing, intimidating, and sexually aggressive behavior.

98.     As a direct and proximate result of the Defendants' negligence, A.P. was sexually assaulted, which has caused her personal injury and emotional distress.

**SEVENTH CLAIM FOR RELIEF**
**Recklessness/Wantonness**

**(Defendants Principal Lane, Assistant Principals Armour and Johnson)**

99.     A.P. incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

100.    Standing *in loco parentis*, the Defendants owed a duty to all students at FCHS, including A.P., to act in a reasonably prudent manner when executing their duties as employees of Fayette County High School to supervise and monitor students who pose a real and immediate danger to their fellow students and to protect all students from harassment, intimidation and sexual assault.

101.    The Defendants recklessly and/or wantonly breached their duties to A.P. by failing to supervise or monitor J. before the assault despite their knowledge of his habit and practice of harassing, intimidating, and sexually aggressive behavior.

102.   As a direct and proximate result of the Defendants' recklessness and/or wantonness, A.P. was sexually assaulted, which has caused her personal injury and emotional distress.

## EIGHTH CLAIM FOR RELIEF
**Negligent/Reckless/Wanton Hiring, Training, Retention and Supervision**

**(Defendants Superintendent Barrow, Principal Lane, Assistant Principals Armour and Johnson)**

103.   A.P. incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

104.   Standing *in loco parentis*, Defendants owed a duty to all students at FCHS, including A.P., to properly hire, train, retain, and supervise all teachers at FCHS.

105.   Defendants negligently, recklessly and/or wantonly breached their duty to all students at FCHS, including A.P., to properly hire, train, retain, and supervise all teachers FCHS and allowing A.P. to be in a position where she could be sexually assaulted.

106.   As a direct and proximate result of Defendants' negligent, reckless, and/or wanton breach of the duty they owed to A.P., A.P. was sexually assaulted,

which caused her personal injury and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff A.P. requests this Court award her:

a.   Compensatory damages on Count I (Title IX: Deliberate Indifference);

b.   Compensatory damages on Count II (Title IX: Retaliation);

c.   Compensatory damages on Count III (Section 1983: Hostile Environment);

d.   Compensatory damages on Count IV (Section 1983: Failure to Train);

e.   Compensatory damages on Count V (Section 1983: Supervisory liability);

f.   Compensatory damages on Count VI (Negligence);

g.   Punitive damages on Count VII (Recklessness & Wantonness);

h.   Punitive damages on Count VIII (Reckless & Wanton Supervision);

i.   Declaratory judgment that the Defendant's treatment of A.P. violated Title IX, the U.S. Constitution and Georgia law;

j.      Injunctive relief ordering the Board to revise its policies, procedures, and practices so that it is in compliance with Title IX and the U.S. Constitution; and

k.      Award Plaintiff A.P. prejudgment and post-judgment interest at the highest rates allowed by law;

l.      Award Plaintiff A.P. costs, expert witness fees, and reasonable attorney's fees;

m.      Assume continuing and indefinite jurisdiction to ensure compliance with the terms of the Orders requested herein;

n.      Award Plaintiff A.P. such other and further relief, including equitable, that this Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury.

Submitted this the 23rd day August, 2019

/s/ Darren W. Penn
Darren W. Penn
Georgia Bar No. 571322
Alexandra "Sachi" Cole
Georgia Bar No. 696892
PENN LAW, LLC
4200 Northside Parkway, NW
Building One Suite 100
Atlanta, GA 30327
Telephone/Fascimile: (404) 961-7655

33

Email:      darren@pennlawgroup.com
            sachi@pennlawgroup.com


Eric J. Artrip (ASB-9673-I68E)
MASTANDO & ARTRIP, LLP
301 Washington Street NW, Suite 302
Huntsville, Alabama 35801
Telephone:  (256) 532-222
Facsimile:  (256) 536-2689
Email:      artrip@mastandoartrip.com

Emily Martin
Adaku Onyeka-Crawford
Margaret Hazuka
NATIONAL WOMEN'S LAW CENTER
11 Dupont Circle, Suite 800
Washington, D.C. 20036
Telephone:  (202) 588-5180
Facsimile:  (202) 588-5185
Email:      emartin@nwlc.org
            aocrawford@nwlc.org
            mhazuka@nwlc.org